# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES HARDWICK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 12-1254-SLR |
| | ) |
| DAVID PIERCE, Warden, | ) |
| and ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

James Hardwick. Pro se petitioner.

Gregory E. Smith. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION

December 10, 2015
Wilmington, Delaware

---

[1]Warden David Pierce replaced former Warden Perry Phelps, an original party to the case. *See* Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner James Hardwick ("petitioner") is a Delaware inmate in custody at the

James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the

court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(D.I. 3; D.I. 11) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in *Hardwick v. State*, 971 A.2d 130,

132 (Del. 2009), and by the Superior Court in *State v. Hardwick*, 2011 WL 2535559

(Del. Super. June 7, 2011), the facts leading to petitioner's arrest and conviction as a

consequence of having sexual relations with his underage stepdaughter, Alice Smith,

and her friend, Peggy Lane (both pseudonyms), are as follows:

> In 2004, petitioner married Alice's mother and moved into her home.
> Petitioner's adult nephew, Matthew, also stayed at the house occasionally.
>
> Peggy testified that in July 2005, when she was thirteen years old, she
> spent the night at Alice's house. Late in the evening, she, Alice, Matthew,
> and petitioner were in the living room. Matthew was sleeping on the sofa
> while petitioner played on the computer. Peggy and Alice saw that
> petitioner was watching pornography. Noticing that the girls were looking
> at the computer screen, petitioner asked whether they liked what they
> saw. He then offered to teach Peggy how to do the acts portrayed in the
> pornography and invited the girls into the basement to look at Playboy
> magazines. According to Peggy, the girls agreed. Peggy alleged that, in
> the basement, petitioner and the two girls engaged in a variety of sexual
> acts. Peggy also testified about another sexual incident that took place
> shortly thereafter at a townhouse in Delaware City involving her, petitioner,
> and Matthew, as well as numerous occurrences of group sex involving
> petitioner, Matthew, and the two girls. According to Peggy, she had sex
> with petitioner at least twenty times on various occasions and she
> consented to all of those sexual encounters with petitioner.
>
> Alice, who was twelve in the summer of 2005, also testified at trial. She
> corroborated Peggy's testimony about the incident in her basement when

Peggy and her stepfather first had sex, although she testified that only Peggy was interested in the pornography and she tried to talk Peggy out of engaging in sexual conduct with petitioner. Alice also testified that she only overheard Peggy and petitioner engaging in sexual conduct once at the Delaware City townhouse. Alice did not support Peggy's allegations of multiple encounters of group sex. She denied engaging in any sexual activity with either Peggy or petitioner on any of the occasions Peggy mentioned; however, she testified that petitioner had forced her to perform oral sex on him at least once a month since she was ten years old.

In 2007, Peggy told her then-boyfriend about her sexual encounters with petitioner. At some point, Alice told Matthew about the sexual encounters with petitioner, but she made Matthew promise not to tell anyone. According to Alice, Matthew seemed surprised. Someone notified the police and the police arrested petitioner. The police interviewed both girls.

*Hardwick*, 971 A.2d at 132-33.

After some discussion with Peggy and her parents about Peggy making a pretext phone call to [petitioner], Peggy called [petitioner]. They spoke to each other three times over two days on August 28 and 29, 2007. All were recorded with her parents' consent. The police gave her "talking points." She described her boyfriend's unsatisfactory (alleged) attempts at oral sex to which he asked if she wanted a "refresher" course. The idea, he said, was to get her as "hot" as she could be.

[Petitioner] asked Peggy when she wanted to do it. She asked if she could bring a friend (there was no "friend" who was going to be there). He asked Peggy if she remembered Delaware City. He said she needed to be really aroused and have energy to do anal intercourse. He spoke to her of past acts of oral sex on him and how she had been rewarded. [Petitioner] said the girlfriend Peggy was bringing had to be trusted. Peggy said she was fifteen and [petitioner] said that was okay.

They set up a meeting in front of a store at People's Plaza in Glasgow at 10:00 a.m. on September 5, 2007. [Petitioner] showed up as arranged. He was arrested. When searched, the police found a condom in his pants pocket. They recovered a cell phone with the same number Peggy had called in late August.

*Hardwick*, 2011 WL 2535559, at *2.

During the police investigation, Detective Rubin of the Newark Police Department interrogated Matthew, the only other individual with

> information regarding the allegations. During that interrogation, Matthew
> claimed that petitioner and he did not commit the alleged sexual acts. The
> State taped that interview and sent it to defense counsel. The defense
> hired a defense investigator to interview Matthew.

*Hardwick*, 971 A.2d at 132-33.

Petitioner was arrested on September 5, 2007. (D.I. 16 at 3) On November 26,

2007 he was indicted on thirty-six counts of first degree rape, two counts of attempted

second degree rape, and two counts of continuous sexual abuse of a child. He was re-

indicted on March 3, 2008. *Id.*

On May 27, 2008, a five day jury trial commenced in the Superior Court. (D.I. 16

at 4) The tapes of the phone calls between petitioner and Peggy were admitted into

evidence during the trial. *See Hardwick v. State*, 47 A.3d 523 (Table), 2012 WL

1067150, at *1 (Del. Mar. 27, 2012). Both Alice and Peggy testified during the trial, but

Matthew did not.[2] *Id.* At the close of the evidence, and before jury instructions, the

---

[2]As explained by the Delaware Supreme Court,

> [d]efense counsel attempted to secure Matthew's appearance at trial and gave
> him a subpoena; however, defense counsel did not subpoena Matthew pursuant
> to 11 Del. Code § 3523, which would have required Matthew to appear under
> penalty of law. The State has yet to decide if it will charge Matthew. Although
> the State did not charge Matthew based on Peggy's allegations, the trial judge
> appointed counsel to represent him. Matthew did not appear at trial. Defense
> counsel twice asked the trial judge for permission to make a missing witness
> argument to the jury. During the first discussion, the trial judge noted his
> concerns about jury speculation, the 403 balancing test, and Matthew's Fifth
> Amendment right. When defense counsel reintroduced his argument for a
> missing witness instruction, the trial judge ruled that, under the circumstances,
> Matthew's nonappearance could not be used against the State and any missing
> witness argument was inappropriate.

*Hardwick*, 971 A.2d at 132-33.

Superior Court dismissed seven counts of first degree rape, and the counts of continuous sexual abuse of a child. The jury convicted petitioner on all remaining charges. *Id.* The Superior Court sentenced petitioner to thirty-one consecutive life sentences. *Id.* Represented by new counsel, petitioner appealed. The Delaware Supreme Court affirmed his convictions and sentences on April 22, 2009. *See Hardwick*, 971 A.3d at 133.

In June 2009, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting, *inter alia*, ineffective assistance of counsel. The Superior Court appointed counsel to represent petitioner, but petitioner discharged counsel and proceeded *pro se*. On March 10, 2011, the Superior Court denied the Rule 61 motion, and then re-issued its opinion on June 7, 2011. *See Hardwick*, 2011 WL 2535559. The Delaware Supreme Court affirmed that judgment on March 27, 2012. *See Hardwick*, 2012 WL 1067150.

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer, arguing that the court should deny the application because the claims are either procedurally barred or do not warrant relief under § 2254(d). (D.I. 16)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. §

4

2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded

5

counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of

6

the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 133 S.Ct. 1088 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at 1091-92.

7

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following seven grounds for relief: (1) the trial court improperly instructed the jury to disregard reasonable doubt standards and harmonize any conflicts; (2) the trial court's jury instruction for first degree rape constructively amended the indictment and deprived petitioner of a fair trial; (3) the police recorded the telephone conversations between petitioner and Peggy without a warrant, thereby rendering the admission of those recorded conversations illegal; (4) the police illegally searched petitioner's car without a warrant and illegally seized items from petitioner's home that were not authorized in the warrant; (5) trial and appellate counsel provided ineffective assistance in numerous ways; (6) trial counsel's failure to call witnesses that could have provided "favorable exculpatory testimony" deprived petitioner of his right to compulsory process; and (7) the State engaged in prosecutorial misconduct by manipulating the testimony provided by petitioner's wife and by suborning perjury of the two victim witnesses.

8

## A. Claim One: Improper Jury Instructions Regarding Witness Credibility

In claim one, petitioner contends that the trial court improperly instructed the jury on witness credibility. Petitioner presented this argument to the Delaware Supreme Court on post-conviction appeal, which denied the claim as procedurally defaulted under Rule 61(i)(3) because petitioner did not present the argument during the trial or on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim one absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his default by blaming defense counsel for failing to raise the issue during his trial or direct appeal. An attorney's ineffective assistance may constitute cause for a procedural default, but only if the attorney's ineffectiveness amounts to a Sixth Amendment violation. *See Murray*, 477 U.S. at 488. As explained later in the opinion, defense counsel's failure to object to the credibility instruction during the trial or on direct appeal did not amount to constitutionally ineffective assistance. *See infra* at 18-19. Therefore, petitioner has failed to demonstrate cause.

9

In the absence of cause, the court need not discuss the issue of prejudice.

Nevertheless, petitioner cannot establish that he was prejudiced by the trial court's jury instruction on witness credibility. The Delaware Supreme Court held on post-conviction appeal that the jury instruction at issue "was an accurate statement of the law and of the jurors' role as the trier of fact. In no way did the trial court's instruction suggest that the evidence against [petitioner] was uncontradicted or that the jurors should believe or disbelieve any particular testimony." *Hardwick*, 2012 WL 1067150, at *2. The court must defer to the Delaware Supreme Court's interpretation and application of Delaware law. Therefore, there was no basis for defense counsel to object to the instruction.

Additionally, the court concludes that the miscarriage of justice exception to the procedural default doctrine does not excuse petitioner's default, because he has failed to provide new reliable evidence of his actual innocence that was not available at trial. For all of these reasons, the court will deny claim one as procedurally barred from federal habeas review.

### B. Claim Two: Jury Instruction Constructively Amended Indictment for First Degree Rape Charges

The Superior Court instructed the jury that the victims, Peggy and Alice, could not, as a matter of law, consent to the sexual acts because of the age difference between them and petitioner. In claim two, petitioner contends that this instruction constructively amended the indictment because it impermissibly removed "force" and "lack of consent" as required elements for the rape charges. He also contends that trial counsel provided ineffective assistance by failing to object to the constructive amendment.

10

On post-conviction appeal, the Delaware Supreme Court concluded that petitioner's failure to brief the argument constituted a waiver of claim two. See Hardwick, 2012 WL 1067150, at *1 n. 5. Whether petitioner's omission is treated as a failure to "fairly present" claim two to the Delaware Supreme, or is treated as a waiver of the claim under Delaware precedent,[3] petitioner's failure to include the argument in his post-conviction appellate brief demonstrates that he did not exhaust state remedies for claim two. At this juncture, Delaware Rule 61(i)(1) would bar petitioner from raising this claim in a new Rule 61 motion. See Del. Super. Ct. Crim. R. 61(i)(1) (imposing a one-year filing deadline for Rule 61 motions). Consequently, the court must treat claim three as exhausted but procedurally defaulted, which means that it cannot review its merits absent a showing of cause and prejudice, or a miscarriage of justice.

Petitioner cannot demonstrate that he was prejudiced by failing to raise the constructive amendment issue. He was charged with rape under former 11 Del. Code § 773(a)(6), which provided that a defendant is guilty of first degree rape when the defendant intentionally engages in sexual intercourse with another person and the victim "has not yet reached his or her sixteenth birthday and the defendant stands in a position of trust, authority or supervision over the child." 11 Del. Code § 773(a)(6) (1998). Notably, former § 773(a)(6) did not include "force" as an element. Moreover, the State presented evidence that petitioner was forty-five years old and the victims were twelve and thirteen years old when the rapes began. The girls' ages, and

---

[3]The Delaware Supreme Court relied upon an independent and adequate Delaware procedural rule in viewing claim two as waived. See Cannon v. Phelps, 2013 WL 3199837, at *12 (D. Del. June 21, 2013).

11

petitioner's position as Alice's step-father, are indisputable facts. Therefore, petitioner's argument that the jury instruction removed the necessary element of "force" and/or "lack of consent" is completely meritless.

To the extent petitioner asserts ineffective assistance as cause for his default, his argument is unavailing because an attorney is not ineffective for failing to raise a meritless argument. Finally, the miscarriage of justice exception does not excuse petitioner's default, because petitioner has not provided new reliable evidence of his actual innocence. For all of these reasons, the court will deny claim two as procedurally barred from habeas review.

### C. Claim Three: Improper Admission of Recorded Phone Conversations

Next, petitioner contends that he was denied a fair trial when the trial court admitted as evidence the recorded phone calls that occurred between himself and Peggy, vaguely alluding that the warrantless recording of his conversations amounted to coercion and entrapment and violated his right against self-incrimination. On post-conviction appeal, the Delaware Supreme Court denied the claim as meritless because the "Fifth Amendment does not offer protection to a defendant who voluntarily incriminates himself, as [petitioner] did in this case." *Hardwick*, 2012 WL 1067150 at *4. Given the Delaware Supreme Court's adjudication of this claim, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *United States v. Patane*, 542 U.S. 630 (2004), the Supreme Court opined "that the

12

core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial. The Clause cannot be violated by the introduction of nontestimonial evidence obtained as the result of voluntary statements." *Patane*, 542 U.S. at 637. In addition, "surreptitious electronic recording of conversations among private persons, and introduction of the recording during a criminal trial, do not violate the Fifth Amendment's ban against compulsory self-incrimination because the conversations are not the product of any official compulsion." *Berger v. New York*, 388 U.S. 41, 107 (1967)(White, J., dissenting); *see Olmstead v. United States*, 277 U.S. 438 (1966)(finding no violation where defendants were not induced by compulsion to continually and voluntarily conduct business on telephones, without knowledge of interceptions), *overruled on other grounds by Katz v. United States*, 389 U.S. 347 (1967). Finally, the "Fifth Amendment has been held not to be implicated by the use of undercover Government agents before charges are filed because of the absence of the potential for compulsion." *United States v. Henry*, 447 U.S. 264, 272 (1980).

The record reveals that petitioner was not in custody when he spoke by phone with Peggy, the police did not compel petitioner to speak with Peggy, and, even though Peggy made the phone call to petitioner at the prompting of the police, nothing in the record indicates that petitioner's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). Since nothing in petitioner's conversation with Peggy amounted to interrogation within the meaning of the Fifth Amendment, the fact that the conversation was recorded does not amount to a constitutional violation. Therefore, the court concludes that the

Delaware Supreme Court reasonably applied clearly established law in determining that petitioner's statements to Peggy were voluntary and that the admission of the recorded conversations did not violate petitioner's Fifth Amendment rights.

## D. Claim Four: Warrantless Search and Seizure

In claim four, petitioner contends that the police violated his Fourth Amendment rights by seizing items from his home and computer following his arrest that were not specifically listed in the search warrant authorizing the search. Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal court cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992). The "full and fair opportunity to litigate" requirement is satisfied if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, regardless of whether the petitioner actually availed himself of that mechanism. *See United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

In this case, the court concludes that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. Petitioner does not allege, and there is no reason to believe, that Delaware's system contains a structural defect that prevented petitioner from litigating the issue raised in claim four. Significantly, petitioner could have filed a

14

motion to suppress the evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, but he chose not to do so. Moreover, although the police recovered items not specifically listed in the search warrant, none of those items were admitted into evidence. (D.I. 18, Affid. of Defense Counsel in Response to Rule 61 Motion for Postconviction Relief) Accordingly, the court will deny claim four as barred by *Stone*.

## E. Claim Five: Miscellaneous Ineffective Assistance of Counsel Allegations

In claim five, petitioner asserts the following ineffective assistance allegations on the part of trial counsel and/or appellate counsel:[4] (1) counsel did not provide any adversarial testing of the State's case; (2) counsel failed to subpoena potential alibi witnesses; (3) counsel failed to challenge the jury instruction regarding witness credibility; (4) counsel did not challenge the State's failure to produce the unknown victim alleged in the attempted second degree rape charge; (5) counsel failed to file a motion to suppress the recorded telephone conversations between petitioner and Peggy; (6) counsel did not challenge the credibility of the victims and/or investigate their backgrounds; (7) counsel did not challenge the inconsistent statements provided by the two victims; (8) counsel did not raise the issue of a speedy trial violation; (9) counsel failed to present mitigating evidence during the sentencing hearing; (10) counsel did not request medical and/or psychological testing of the victims; (11) counsel informed the

_____

[4]The State identifies thirteen allegations of ineffective assistance, but the claims the State identifies as claim one and claim two assert the same "lack of adversarial testing" argument. The court has combined what the State identifies as claims one and two into one single allegation ("allegation one"). Therefore, the court lists, and reviews, twelve ineffective assistance allegations.

15

jury that he did not know what the evidence was in petitioner's case; and (12) the accumulation of these errors deserve relief.

Petitioner presented allegations one through twelve in his Rule 61 motion, and the Superior Court denied them as meritless. However, because petitioner did not reassert six of the claims on post-conviction appeal, the Delaware Supreme Court determined that those six claims were waived, and refused to consider those claims on the merits. In short, petitioner's waiver of the six ineffective assistance of counsel claims effectuated a procedural default of those claims.

Assuming that *Martinez v. Ryan*, 132 S.Ct, 1309, 1315 (2012) provides a method for avoiding a determination that the claims are procedurally defaulted, the State contends that the court should deny all thirteen ineffective assistance allegations as meritless. Given the confusing manner in which petitioner has presented the claims in this proceeding, and the State's apparent waiver of petitioner's procedural default, the court will exercise prudence and review the claims under § 2254(d)(1).

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's

16

error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware State Courts correctly identified the *Strickland* standard applicable to petitioner's ineffective assistance of counsel allegations. Thus, the Delaware State Courts' denial of the instant allegations of ineffective assistance was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if the Delaware State Courts' denial of the ineffective assistance allegations involved a reasonable application of *Strickland*. When performing this inquiry, the court must review the Delaware state court decisions with respect to petitioner's ineffective assistance of counsel claim through "doubly deferential" lens. *See Harrington*, 562 U.S. at 105-06. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The court will review petitioner's thirteen claims in seriatim.

17

### 1. Counsel did not provide adversarial testing to the State's case

According to petitioner, trial counsel refused to aid in preparing and presenting any defense to the jury, and was essentially a "friend" to the prosecution's case. The record belies this contention. Trial counsel made an opening statement, cross-examined each of the five prosecution witnesses, and made a closing argument. Trial counsel also presented the Division of Family Services ("DFS") employee who interviewed Alice a short time after the sexual activities occurred to show that Alice could have, but did not, report those activities. See Hardwick, 2011 WL 855854, at *8. Therefore, the court concludes that Delaware State Court's reasonably applied Strickland in denying this allegation as baseless.

### 2. Counsel failed to subpoena potential alibi witnesses

Petitioner contends that counsel should have subpoenaed Matthew and other alibi witnesses to testify during his trial. The court addresses this allegation later in the in the opinion in its review of claim six. See infra at 28-30.

### 3. Counsel failed to challenge the jury instruction regarding witness credibility

Next, petitioner contends that trial counsel should have objected to the trial court's witness credibility jury instruction for being an impermissible comment on the evidence as "uncontradicted" and because it effectively mandated that the jury reach a guilty verdict. As previously discussed in this opinion, the Delaware Supreme Court opined on post-conviction appeal that the jury instruction at issue "was an accurate statement of the law and of the jurors' role as the trier of fact. In no way did the trial court's instruction suggest that the evidence against [petitioner] was uncontradicted or

18

that the jurors should believe or disbelieve any particular testimony." *Hardwick*, 2012 WL 1067150, at \*2. Given the Delaware Supreme Court's holding that the jury instruction was an accurate statement of the law, petitioner cannot demonstrate that a reasonable probability that the outcome of his proceeding would have been different if counsel had raised the meritless objection. Accordingly, the court will deny the instant argument.

### 4. Counsel failed to challenge State's failure to present unknown attempted rape victim

Count thirty-one of the indictment charged petitioner with attempted second degree rape of an unknown female victim. During petitioner's trial, the recorded telephone conversations between Peggy and petitioner were admitted as evidence; in those conversations, Peggy asked if she could bring a fifteen year-old friend to petitioner's "refresher course", and petitioner said yes, as long as the friend could be trusted.

Here, petitioner contends that counsel should have challenged count thirty-one on the basis that there was no actual "victim" because the fifteen-year old friend Peggy was supposed to bring to the "refresher course" with petitioner was fictitious. The Delaware Supreme Court denied the claim as meritless, explaining that

> [petitioner] was charged with attempted rape based on the evidence contained in his recorded phone calls with Peggy during which he made arrangements to meet Peggy and, he believed, her fifteen-year-old friend for sex. Petitioner was forty-nine years old at the time. It is irrelevant that the fifteen-year-old friend was fictitious. Under the circumstances as he believed them to be, [petitioner] showed up at the prearranged meeting place at the agreed-to time with a condom in his pocket. He thus took a substantial step toward completing the crime of second degree rape. The charge of attempted second degree rape was proven beyond a reasonable doubt.

*Hardwick*, 2012 WL 1067150, at \*4.

Pursuant to 11 Del. Code § 531, a "person is guilty of an attempt to commit a crime if the person (1) intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person." In turn, a "substantial step under § 531 [] is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting." 11 Del. Code § 531. Because neither Delaware statute requires the accused to have actually accomplished his purpose, the fact that the victim is fictitious is immaterial to the crime of attempt. Indeed, federal courts have often affirmed convictions under similar circumstances where the victim is either completely fictitious or an undercover agent posing as an underage individual. *See, e.g., United States v. Pawlowski*, 682 F.3d 205 (3d Cir. 2012); *United States v. D'Andrea*, 440 F. App'x 273 (5th Cir. 2011); *United States v. Young*, 613 F.3d 735 (8th Cir. 2010). For instance, in *United States v. Lundy*, 676 F.3d 444 (5th Cir. 2012), the defendant was convicted of the federal crime of attempting to engage in illegal sexual activity that would have constituted statutory rape under Mississippi law, because he texted and engaged in phone conversations with a girl he thought was fifteen years old, but who was actually an undercover police officer, and the two had agreed to meet to have sex. The defendant was arrested when he arrived at the agreed upon meeting location. On direct appeal, the Fifth Circuit affirmed the

20

defendant's conviction, explaining that it "has repeatedly held that factual impossibility to complete a criminal act does not preclude a conviction for attempting to break the law," and the "argument that he could not have committed statutory rape [under Mississippi law] with a 'faux child' does not stop him from being charged with attempting to break the statutory law, if the facts had been as he thought they were." *Id.* at 448-49.

Significantly, petitioner was not charged with second degree rape of the unknown victim but, rather, of attempted second degree rape of the unknown victim. As found by the Delaware Supreme Court, the evidence introduced at trial was sufficient to establish petitioner's requisite intent and other elements of that crime. Consequently, petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for counsel's failure to contend that petitioner could not be charged with attempted second degree rape of an unknown victim. Therefore, the court will deny the instant argument for failing to satisfy § 2254(d).

### 5. Failure to file a motion to suppress the recorded telephone conversations

Petitioner asserts that counsel should have moved to suppress his recorded telephone conversations with Peggy. The Delaware Supreme Court denied the argument as meritless, holding that "counsel had no basis to file a motion to suppress because, in accordance with 11 Del. Code § 2402(c) (4), Peggy's parents had given their prior consent to the police recording their daughter's phone calls with [petitioner]." *Hardwick*, 2012 WL 1067150 at*4. The Delaware Supreme Court also noted that defense counsel had no basis to file a motion to suppress on Fifth Amendment grounds because petitioner voluntarily incriminated himself. *Id.*

21

In his Rule 61 affidavit, defense counsel explains that he "looked closely at this issue" prior to trial and determined that there was no good faith basis for moving to suppress the phone calls because there was no "illegal interception" under 11 Del. Code § 2402(4) and § 2402(5)(d). (D.I. 18, Affid. of Defense Counsel in Response to Rule 61 Motion for Postconviction Relief, *State v. Hardwick*, I.D. No. 0709006233) Both the Superior Court and the Delaware Supreme Court concurred with defense counsel's conclusion and held that the consent given by Peggy's parents precluded any argument for suppression of the recorded telephone conversations pursuant to 11 Del. Code § 2402(c)(4).

On habeas review, the court must defer to the Delaware Supreme Court's interpretation and application of Delaware state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In turn, it is well-settled that an attorney does not provide ineffective assistance by failing to present meritless arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Given the Delaware Supreme Court's holding that there was no basis for suppressing the recorded telephone conversations, and looking at the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that defense counsel did not provide ineffective assistance by failing to file a meritless suppression motion. Accordingly, the court will deny claim three.

### 6. Failure to investigate background of victims to determine if they were credible

Petitioner contends that counsel failed to investigate the backgrounds of Peggy and Alice in order to challenge their credibility. The Superior Court denied this claim as meritless, stating, "What reputations? They were twelve and thirteen when [petitioner] raped them. This claim is not worth anything." *Hardwick*, 2011 WL 2535559, at *10.

In the recorded phone conversations, petitioner reminisces about prior sexual encounters with Peggy, plans a future sexual encounter, and expresses an awareness that his behavior is against the law. (D.I. 18, App. to State's Ans. Br. in *Hardwick v. State*, Nos. 262 &291, 2011, at B-1 to B-20) Petitioner's statements corroborate the testimony provided by the two girls. Therefore, after considering the content of petitioner's recorded conversation with Peggy along with the other evidence, and viewing the Superior Court's decision through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying this allegation.

### 7. Failure to challenge the victims' inconsistent statements

Next, petitioner asserts that counsel did not challenge the inconsistent stories provided by the victims when they testified. After referencing the trial transcript, the Superior Court denied this argument as baseless. The court has independently reviewed the transcript, and concludes that the Superior Court's decision was a reasonable determination of the facts. Notably, during his closing argument, defense counsel stated,

> [a]nd the evidence in this case has been very contradictory – very contradictory []. [T]here were two witnesses who almost sounded like they

23

> were testifying in two different trials. If you looked at their testimony
> individually, you might think there were two different people on trial here
> because they were so contradictory in nature.

(D.I. 18, Transcript of Trial Proceedings, June 3, 2008, at 42-3) Defense counsel then proceeded to thoroughly describe the "problems" he had with the victims' testimony.

Having concluded that the Superior Court reasonably determined that the record belies petitioner's instant assertion, the court further concludes that the Delaware state courts' denial of this assertion involved a reasonable application of *Strickland*. Therefore, the court will deny petitioner's contention that counsel failed to challenge the victims' inconsistent statements for failing to satisfy § 2254(d).

### 8. Failure to raise a speedy trial objection

Petitioner contends that counsel should have moved to dismiss the charges against him on the ground that his speedy trial rights were violated. The Superior Court denied this argument because petitioner did not assert the issue on direct appeal and also because petitioner "went to trial 192 days after his indictment." *Hardwick*, 2011 WL 253559, at *9.

Pursuant to *Barker v. Wingo*, 407 U.S. 514, 530 (1972), there are four factors which should be addressed when determining if a particular defendant has been deprived of his right to a speedy trial: length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go in to the balance." *Id.* As the Delaware Supreme Court noted in *Dabney v. State*, 953 A.2d 159, 165 (Del. 2008), "the Superior Court speedy trial guidelines set the standard

24

that 90% of criminal trials should be held, or the cases otherwise disposed of, within 120 days of indictment, 98% within 180 days, and all cases within one year." Considering that petitioner went to trial twelve days past the standard for 98% of Delaware cases, and well within a year, the court cannot conclude that the Superior Court's rejection of petitioner's underlying speedy trial claim was unreasonable. This conclusion is further supported by the fact that the record is devoid of any indication that petitioner asserted his right to a speedy trial, and because he has failed to demonstrate how he was prejudiced by the alleged delay.

Having determined that the Superior Court reasonably found that petitioner's alleged speedy trial violation was baseless, the court further concludes that the Delaware state courts reasonably applied *Strickland* in concluding that defense counsel did not provide ineffective assistance by not raising the meritless speedy trial argument.

## 9. Failure to present mitigating evidence

Next, petitioner asserts that counsel failed to present mitigation evidence at his sentencing hearing. The Superior Court denied this claim for the following reason:

> [Petitioner] overlooks the statutory fact that his prior conviction for raping another step-daughter[5] mandated a life sentence for each of the twenty-nine counts of rape first degree. The same statute mandated a sentence of twenty-five years to life for the two counts of attempted rape second. The Court believed and believes a life sentence for those two charges was appropriate. [Petitioner], more than anyone, would be in possession of whatever mitigating information he claims counsel should have found. But he has failed to supply any --- even now. This claim rings hollow.

*Hardwick*, 2011 WL 2535559, at *10.

---

[5]Petitioner served a twenty year prison sentence in Pennsylvania for raping a different step-daughter. (D.I. 18, State's Ans. Br. in *Hardwick v. State*, Nos. 262 & 291, 2011, at 6)

25

In this proceeding, petitioner has not described any mitigation evidence he believes counsel should have either discovered or presented. He also fails to demonstrate how the presentation of mitigation evidence would have affected his mandatory life sentences. Therefore, viewing the Delaware state courts' denial of this claim through the applicable doubly deferential lens, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying this conclusory claim.

### 10. Failure to have victims medically and psychologically tested

Petitioner contends that counsel should have subjected Alice and Peggy to medical and psychological testing. The Superior Court denied this claim for lack of specificity, explaining that,

> Detective Rubin testified that, after two years, any DNA testing or rape kit testing would have served no purpose. [Petitioner] does not say what such testing would have done or what kind of testing he believes should have been done. This claim lacks merit.

*Hardwick*, 2011 WL 2535559, at *8. Petitioner's presentation of the argument in this proceeding fares no better. For instance, the "bulk" of the sexual acts for which petitioner was convicted occurred sometime around September 2005, but Alice and Peggy did not report what had happened until two years later. *See Hardwick*, 2011 WL 2535559, at *6-*7. Defense counsel used the victims' delay in reporting the crimes to the greatest extent he could during the trial by calling DFS workers to testify about an earlier unsubstantiated investigation of petitioner; by challenging the police decision not to test a pubic hair found on a jar of vasoline; and by vigorously questioning the victims' credibility. Petitioner's instant succinct and conclusory statement regarding counsel's "failure" to obtain medical and psychological testing of the victims two years after the

26

offenses occurred does not demonstrate a reasonable probability that the outcome of his proceeding would have been different but for counsel's failure to obtain this testing two years after the crime. Therefore, the court concludes that the Delaware state court reasonably applied *Strickland* in denying this allegation.

### 11. Failure to know the evidence against petitioner

Next, petitioner contends that defense counsel was ineffective for stating in his opening statement to the jury that, as petitioner's "attorney, I'm not going stand up here and tell you what the evidence is or is not going to be in this case. And the reason I'm not going to do that is because I don't know what he evidence is." (D.I. 18, Trial Transcript, May 28, 2008, at 39-40) This argument lacks merit. After speaking the aforementioned sentence, counsel went on to say,

> As the judge told you, nothing the lawyers say at this point in time is evidence you should consider when you go back to deliberate in the jury room. The prosecutor's job is to convict [petitioner] of these crimes. The prosecutor has had him charged with these crimes, and it's his job to convict him. So, he wants to get up here, he's got the first crack at you, and tell you what the evidence is going to be. But the fact is, the evidence is going to be what the witnesses say from the witness stand. That's going to be the evidence you have to consider when you go back to deliberate. So, as jurors, while you're listening to the evidence in this case, there's a couple point's I'd like you to consider while you're sitting here.

*Id.* When viewed in its proper context, counsel's statement was designed to convince the jurors not to accept the prosecutor's preview of the evidence, and inform them that they would have to sift through the evidence and weigh it on their own at the close of the case. The statement was not an indication that defense counsel truly did not know the evidence against petitioner. Accordingly, the court will deny the instant ineffective assistance allegation as meritless.

27

### 12. Cumulative errors amounted to ineffective assistance

Finally, petitioner asserts that he suffered prejudice from the accumulation of the aforementioned attorney errors. Having already determined that none of petitioner's complaints about counsel warrant relief, the court will deny this final argument as meritless.

### F. Claim Six: Ineffective Assistance of Counsel Re: Failure to Subpoena Witnesses

Petitioner's next claim is that defense counsel's failure to subpoena his nephew Matthew to be a witness, or to present any other favorable witnesses, deprived him of a fair trial. The Delaware Supreme Court denied this claim as meritless on post-conviction appeal. Therefore, petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Delaware Supreme Court's decision was not contrary to clearly established federal law because the Delaware Supreme Court correctly identified the two-pronged *Strickland* standard applicable to claim six. The court also concludes that the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of petitioner's case. In rejecting the instant claim, the Delaware Supreme Court explained that:

> The record reflects that [Peggy] told police that Matthew had participated in some of the sexual assaults together with petitioner. [Alice] disputed Matthew's involvement. When interviewed by police, Matthew denied participating in or knowing about [petitioner's] assaults. Matthew informed defense counsel that he would appear voluntarily and testify on [petitioner's] behalf at trial. Given his concerns over Matthew's possible self-incrimination, defense counsel requested that the trial court appoint counsel to represent Matthew. Defense counsel arranged transportation for Matthew to get to the courthouse. When the time came, however, defense counsel was informed by [petitioner's] own mother that Matthew

28

had left his house in Pennsylvania and that his family did not know his whereabouts. Defense counsel requested a missing witness instruction, which the Superior Court refused to give. [The Delaware Supreme] Court affirmed that ruling on direct appeal.

\*                    \*                    \*

In this case, we agree with the Superior's Court conclusion that [petitioner] can establish neither unreasonable attorney error nor prejudice. The record reflects that defense counsel was concerned enough about Matthew's potential criminal involvement and how he would testify at [petitioner's] trial that he arranged in advance to have separate counsel appointed to represent Matthew. Even assuming that Matthew would have agreed to testify rather than invoking his rights under the Fifth Amendment, [petitioner] has failed to substantiate his claim that Matthew would have provided exculpatory testimony. Even if Matthew had been able to provide some testimony contradicting [Peggy's] testimony, we agree with the Superior Court that such testimony, given Matthews's self-interest and the other evidence against [petitioner], would *not* have changed the outcome of the trial. Similarly, to the extent that [petitioner] suggests that trial counsel erred in failing to call other "favorable" witnesses for the defense, [petitioner] has failed to substantiate what favorable testimony these witnesses could have provided and how it would have changed the outcome of his trial. Accordingly, we reject this claim on appeal.

*Hardwick*, 2012 WL 1067150, at \*3. Notably, in his Rule 61 affidavit, trial counsel

explains that petitioner only identified one other potential alibi witness in addition to

Matthew. (D.I. 18, Affid. of Defense Counsel in Response to Rule 61 Motion for

Postconviction Relief) An investigator with the Public Defender's Office interviewed the

other potential witness, who told the investigator that she could not recall any specific

dates necessary to establish an alibi. *Id.* In addition, the potential witness' comments

about petitioner's behavior were not favorable. Thus, based on the investigator's

interview, trial counsel chose not to call the other person identified by petitioner as an

alibi witness. *Id.*

29

It is well-settled that an otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the defendant's wishes. *See, e.g., Diggs v. Owens*, 833 F.2d 439, 445-46 (3d Cir. 1987). Moreover, to succeed on an ineffective assistance claim based on counsel's failure to call certain witnesses, a petitioner must show how their testimony would have been favorable and material. *See United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

Based on the foregoing record, and viewing the Delaware Supreme Court's decision through a doubly deferential lens, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in rejecting petitioner's argument that defense counsel rendered ineffective assistance by not subpoenaing Matthew and by not calling the other potential alibi witness to testify. First, petitioner has failed to establish prejudice resulting from trial counsel's failure to subpoena Matthew because he has not demonstrated a reasonable probability that Matthew's potential testimony would have affected the outcome of his case. Second, petitioner cannot demonstrate prejudice resulting from trial counsel's failure to call the other potential witness to testify, because that witness would not have been able to provide an alibi for petitioner. Accordingly, the court will deny claim four for failing to satisfy § 2254(d).

## G. Claim Seven: "Official Oppression"/Prosecutorial Misconduct

In his final claim petitioner asserts that the State engaged prosecutorial misconduct by threatening petitioner's wife with prosecution if she failed to cooperate on the witness stand and by suborning perjury of the two victim witnesses. Relatedly, petitioner contends that defense counsel was complicit in this misconduct.

The record reveals, and petitioner concedes, that he did not present this claim to the Delaware Supreme Court on direct appeal or on post-conviction appeal. At this juncture, any attempt to present this claim in a new Rule 61 motion in the Delaware state courts would be barred as untimely and procedurally defaulted. *See* Del. Super. Ct. Crim. R. 61(i)(1), (3). Given these circumstances, the court must excuse petitioner's failure to exhaust state remedies but treat the claim as procedurally defaulted. Consequently, the court can only review claim seven on the merits if petitioner demonstrates cause and prejudice, or a miscarriage of justice.

Petitioner attempts to establish cause for his default on the State's alleged delay in providing his trial transcripts. He also asserts that, once he obtained and reread the transcripts, he did not how to articulate the instant claim with specificity. These explanations fail to establish cause for procedural default purposes. The fact that petitioner attached portions of his transcript to his Rule 61 appellate brief demonstrates that he had the necessary information to craft the instant argument, and petitioner's inability to "articulate" the argument is irrelevant.

To the extent petitioner's contention that defense counsel was complicit in the prosecutorial misconduct is a further attempt to establish cause, it is unavailing. Petitioner never presented an ineffective assistance of counsel claim based on counsel's failure to raise prosecutorial misconduct claim in his state collateral proceeding or in his subsequent post-conviction appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, *see* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse petitioner's procedural default of the substantive

prosecutorial misconduct claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

In the absence of cause, the court need not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not apply because petitioner has failed to present new reliable evidence of his actual innocence that was not available at the time of his trial. Accordingly, the court will deny claim seven as procedurally barred from federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.